ESTHER GENOVA v. ST. PAUL BRIDGE & TERMINAL
RAILWAY COMPANY.[1]

October 6, 1933.

No. 29,563.

Samuel A. Anderson, Russell M. Carlson, and Keefe & Fallon, for appellant.

D. L. Grannis and Barrows, Stewart, Jackson & Junkin, for respondent.

*LORING, Justice.*

In an action to recover for the death of Charles Genova the plaintiff had a verdict. The defendant moved for judgment notwithstanding the verdict or for a new trial. The motion for judgment notwithstanding the verdict was granted, and the case comes here on the plaintiff's appeal from that order. The court did not pass

[1]Reported in 250 N. W. 190.
Application for certiorari to United States Supreme Court pending.

on the motion for new trial; hence no question relating to that motion is before us.

Genova was a *lamplighter and messenger* in the employ of the defendant and was run over and killed by a train shortly after seven o'clock on the morning of January 13, 1932, while performing his duties. It is the claim of the plaintiff that he was killed while .walking along what is known as the river track in the defendant's yards in South St. Paul. This track runs north and south, and Genova was walking north along the track after performing an errand to the south of Grand avenue in that city. The plaintiff claims that Genova was run over by a train while he was walking between the rails as he proceeded north. This train consisted of an old-fashioned passenger coach with open platforms, a caboose, an engine with a tender next to the caboose, and some 65 stock cars. The cars were arranged in the order named, with the coach at the front end of the train in the way that it was proceeding. It was a cold winter morning, somewhat foggy, and day was just breaking at the time the accident occurred. It was dark enough so that an opposing headlight interfered with the engineer's vision, and light enough for a man to be seen without artificial light at three or four car-lengths. Plaintiff claims that custom required that a switchman with a lantern be stationed on the front platform of the coach to protect the train and to warn anyone upon the track of its approach. She also claims that upon the occasion of this accident this train was not so protected; that in consequence no warning was given to Genova of its approach; and that his death was due to the lack of this precaution. The defendant claims that Genova had got onto the footboard of the engine and in some way slipped off and was killed by being run over by the cars.

■ To support the plaintiff's theory much depends upon the evidence of John W. Sweger, a young man who testified that just prior to the accident he was walking south on the track of the Rock Island railroad which runs parallel to and at an elevation of about six feet above the river track, on which the accident occurred. He testified that shortly after seven o'clock he saw Genova walking

north between the rails of the river track and about 40 feet south of an ice tunnel which runs under the track at a point about 1,500 feet north of Grand avenue. He testified that he exchanged greetings with Genova and walked on; that he saw the train coming from the south a couple of car-lengths behind Genova; that there was no one on the platform of the coach and no light at the front end thereof. He said that as the train passed him he noticed a light about the middle of the coach.

There were about four inches of heavy snow on the ground, and the mark of Genova's body between the rails indicates that the accident took place at or about the tunnel. Evidence was introduced by plaintiff that an examination was made by a witness shortly after the accident which showed a row of footprints between the rails of the river track coming from the south and terminating where the mark of Genova's body in the snow commenced. This witness saw no other footprints in the snow to the south of the mark. At a point still farther north the witness testified that he saw the train in motion and that there was no person or light on the front platform of the coach.

Two switchmen for the defendant testified that they were standing on the front platform of the coach as it proceeded north; that they had their lanterns with them; and that they saw no person whatever between the rails nor did they see anything of Genova. The engineer was on the west side of his engine as it backed, with his head out of the window looking north, and saw nothing of Genova. He testified that he could not see along the track on which he was proceeding because of the presence of the coach and caboose.

The defendant's case depends largely upon whether or not the evidence of Sweger is so inherently improbable as to be unworthy of belief or so overwhelmingly overborne by other uncontradicted and credible evidence that reasonable minds functioning judicially would not place any credence in his testimony.

The testimony upon which the defendant principally relies to demonstrate that plaintiff's theory is not entitled to credence is that which fixes the time at which the train left Grand avenue and

passed other points on its way north. With the exception of the time when the train left certain points north of the place of the accident, the testimony is based on estimates of time elapsing after whistles were blown or other habitual acts occurred. It is claimed by defendant that Sweger could not have traveled from his home to the point where he claims to have seen Genova in time to see either him or the train. Here again Sweger's time of arrival at the point in question was based on an estimate by him of his time of arising and the length of time it took him to dress. He said that he left his abode after seven o'clock, and it is estimated that at least 15 minutes would have been required for him to walk to where he saw Genova. The two switchmen who claim to have been riding the front platform of the coach testified that they saw nothing of Sweger walking on the Rock Island track which was 20 feet to the east and about six feet above the river track, on which they were moving at a rate of six or eight miles an hour. But, on the other hand, they make no claim to having seen Genova where defendant's witness Stankovich said he was. If they were on the platform and Genova was walking between the river track and the whisky track, they could scarcely have missed him. The tracks were only about eight feet apart, and their coach would have passed within two or three feet of Genova. The engineer was on the alert looking towards the north. While his view of the river track itself was cut off, he could see along the side of his train. He would hardly have missed Genova if Genova had stepped onto his engine as Stankovich said he did.

The defendant's testimony is persuasive that the accident occurred at or prior to 7:10; but, on the other hand, Sweger is positive that it was later, and equally positive that, whatever the time was, he saw Genova walking up the track just before he got to the point of the accident. It seems improbable that he would have seen him within a couple of car-lengths of the train without warning of its approach even if it was not going over eight miles an hour. It may be that Sweger's story is entirely false. However, we think that the truth of his story was for the jury and that a

question of fact was presented. Reasonable minds might believe from the evidence that the accident happened as claimed by the plaintiff.

■ The question of assumption of the risk is presented by the briefs. We have carefully considered it, and we think it was a question for the jury.

The order is reversed and the case remanded.

Reversed.